**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| MCE Automotive, Inc. d/b/a Toyota of Greer;  MCE Cars, Inc. d/b/a Kia of Greer; Eugene Black, and David Allen Perry, | ) ) ) | |
| | ) | C.A. No. 6:10-cv-00409-JMC |
| Plaintiffs, | ) ) | |
| | ) | **ORDER AND OPINION** |
| | ) | |
| | ) | |
| v. | ) ) | |
| Susan Wetherald as Permanent Guardian and Conservator for Patricia A. Kaufman, a vulnerable adult, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

This case is before the court on MCE Automotive, Inc. d/b/a Toyota of Greer, MCE Cars, Inc. d/b/a Kia of Greer, Eugene Black and David Allen Perry's (collectively known as "Plaintiffs") Motion to Compel Arbitration and to Stay All Proceedings Pending Resolution of Arbitrability of Claims.  [Doc. # 5].  This court has jurisdiction under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2010).  The court has subject matter jurisdiction based on diversity under 28 U.S.C. § 1332 because Plaintiffs are citizens of South Carolina and Susan Wetherald and Patricia A. Kaufman (collectively referred to as "Defendants" and individually referred to as "Ms. Wetherald" and "Ms. Kaufman") are citizens of Florida.  [Doc. # 5-2, at 6 ¶1].  After reviewing the motions, memoranda, and applicable law, Plaintiffs' Motion to Compel Arbitration and to Stay All Proceedings Pending Resolution of Arbitrability of Claims [Doc. # 5] is granted.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiffs sold thirteen (13) automobiles to Ms. Kaufman over a twenty (20) month period between July 2, 2007 and March 9, 2009.[1]  On May 5, 2009, pursuant to a Greenville County Probate Court Order, Ms. Kaufman was adjudged incompetent to handle her own affairs and determined to be a vulnerable adult as defined by S.C. Code 1976 § 43-35-10(11) (2010).  Pursuant to this Greenville County Probate Court Order, Ms. Kaufman's daughter, Ms. Wetherald, was appointed Conservator and Permanent Guardian over her mother's affairs. [Doc. # 5-2, at 7, ¶7].  Ms. Wetherald subsequently filed suit on behalf of Ms. Kaufman on December 29, 2009 in state court

---

[1]
- On July 2, 2007, Plaintiffs Toyota and Black sold to Ms. Kaufman a new 2007 Toyota Prius for $13,973.53.
- On March 16, 2008, Plaintiffs Toyota and Black sold to Ms. Kaufman a new 2009 Toyota Venza for $37,538.00.
- On March 25, 2008, Plaintiffs Toyota and Black sold to Ms. Kaufman a new 2008 Rav4 UT for $29,459.00.
- On March 27, 2008, Plaintiffs Toyota and Black sold to Ms. Kaufman a new 2008 Toyota Yaris for $16,789.13.
- On April 11, 2008, Plaintiffs Toyota and Black sold to Ms. Kaufman a new 2008 Toyota Rav4 for $32,131.38.
- On August 20, 2008, Plaintiffs Toyota and Black sold to Ms. Kaufman a new 2009 Toyota HB for $24,357.00.
- On February 25, 2009, Plaintiffs Kia and Perry sold to Ms. Kaufman a new 2008 Kia Sorento for $23,000.00.
- On February 25, 2009, Plaintiffs Kia and Perry sold to Ms. Kaufman a new Kia for $34,234.00.
- On March 9, 2009, Plaintiffs Kia and Perry sold to Ms. Kaufman a new 2007 Toyota Tacoma for $22,236.22.
- On March 17, 2009, Plaintiffs Toyota and Black sold to Ms. Kaufman a new 2009 Toyota Tacoma for $32,734.00.
- On March 19, 2009, Plaintiffs Toyota and Black sold to Ms. Kaufman a new Toyota Tacoma for $35,692.00.
- On March 21, 2009, Plaintiffs Toyota and Black sold to Ms. Kaufman a new 2009 Toyota Tacoma for $21,672.00.
- On March 23, 2009, Plaintiffs Toyota and Black sold to Ms. Kaufman a new 2008 Toyota Solara, the sales price of which is unknown.

in Greenville County, South Carolina. The suit alleges exploitation of a vulnerable adult, civil conspiracy, conversion, illegal and unenforceable contract, unfair trade practices, and negligence. At the time Ms. Wetherald filed suit in Greenville County, Ms. Kaufman was eighty-two (82) years old. In response to Ms. Wetherald's state court suit, Plaintiffs filed their Motion to Compel Arbitration in this court on February 25, 2010.

## LAW AND ANALYSIS

The purpose of the Federal Arbitration Act ("FAA") is to "overcome courts' refusals to enforce agreements to arbitrate." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). Consequently, the FAA reflects "a liberal federal policy favoring arbitration agreements . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983); 9 U.S.C §§ 1-16 (2010). Arising out of this "liberal policy" is the Supreme Court's mandate that "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt Info. Sci., Inc. v. Bd. Of Trs.,* 489 U.S. 468, 475-76 (1989).

Section 2 of the FAA provides that agreements to arbitrate found in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2010). Section 3 of the FAA provides the means by which a party may seek a stay of pending litigation and a court order compelling arbitration. *See* 9 U.S.C. § 3 (2010). Under section 4 of the FAA, a party, in response to an opposing party's refusal to arbitrate under a contract, may "petition in any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order directing that such arbitration proceed in the

manner provided for in the agreement." 9 U.S.C. § 4 (2010). Despite these policies favoring arbitration, long-standing Supreme Court precedent has given federal courts authority to evaluate the validity of arbitration agreements. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-04 (1967). As the Supreme Court recently reiterated, "[i]f a party challenges the validity under [9 U.S.C.] § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under [9 U.S.C.] § 4." *See Rent-A-Center, West, Inc. v. Jackson,* 130 S. Ct. 2772, 2778 (2010). And "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract . . . unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. " *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006).

In *Whiteside v. Teltech Corp.*, the United States Court of Appeals for the Fourth Circuit established a four-part test to determine whether a litigant can compel arbitration under the FAA. 940 F.2d 99, 102 (4th Cir. 1991). Under this test, the litigant must demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute." *Id.* In this case, there is a dispute between the parties, and there is a Purchase Order ("Contract") that includes an Arbitration Agreement governing Defendants' claims. Additionally, the Contract involves interstate commerce because the automobiles sold to Ms. Kaufman crossed state lines. [Doc. # 5-4, at 2, ¶ 10]. Finally, Ms. Wetherald's state court suit in South Carolina evidences a refusal to submit her claims to arbitration. At issue in this case, then,

is whether Defendants specifically challenge the validity of the Arbitration Agreement such that this court, in the first instance, can rule on the Arbitration Agreement's validity.

## I.    Validity of the Arbitration Agreement

According to the United States Supreme Court, since an arbitration agreement is severable from the Contract as a whole, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v Floyd and Conklin Mfg. Co.*, 388 U.S. 395, 402-04 (1967). And again, challenges to the validity of the Contract as a whole are for the arbitrator to adjudicate. *See Buckeye Check Cashing*, 546 U.S. at 449. In this case, Ms. Wetherald's state court complaint makes no reference to the Arbitration Agreement and instead only challenges the Contract's validity. According to the complaint's fourth cause of action, "[Ms. Kaufman] was incapable of entering into any valid **contract** due to her advanced age, and physical, mental, or emotional dysfunction." [Doc. # 5-2, at 13, ¶ 35] (emphasis added). Paragraph thirty-six of Ms. Wetherald's complaint states that "[Toyota and Kia of Greer] knew or should of [sic] known of [] [Ms. Kaufman's] incapacity to **contract** . . . ." [Doc. # 5-2, at 13, ¶ 36] (emphasis added). And in paragraph thirty-seven, Ms. Wetherald alleges "[t]hat the contracts entered into by the parties for these new car purchases were void and illegal due to the lack of legal capacity of [Ms. Kaufman] to enter into a binding and legal **contract**." [Doc. # 5-2, at 13, ¶ 37] (emphasis added).

Furthermore, Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Arbitration [Doc. # 6] does not specifically challenge the validity of the Arbitration Agreement. In their memorandum, Defendants state that according to the South Carolina Supreme Court "arbitration is a matter of contract law and is available only when the parties involved contractually agreed to arbitrate." *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 24, 644

S.E.2d 663, 668 (2007). They also assert that under S.C. Code Ann. § 15-48-10(a) (2009), a party may seek to revoke a contract on "such grounds as exist at law or in equity" including unconscionabilty, duress, and fraud. Despite their citations to South Carolina law, Defendants fail to apply the law specifically to the Arbitration Agreement, and they do not challenge the Arbitration Agreement as unconscionable.

## II.      Unconscionability of the Arbitration Agreement

Unconscionability is defined "as the absence of meaningful choice on the part of one party together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Simpson*, 373 S.C. at 24-25, 644 S.E.2d at 668. Defendants' discussion of unconscionability is misguided because they do not apply South Carolina unconscionability law specifically to the Arbitration Agreement. Instead, their focus is on Plaintiffs' alleged "outrageous conduct" when Plaintiffs sold the thirteen cars to Ms. Kaufman.

Defendants rely on two South Carolina cases in support of their allegations of outrageous conduct. They first argue that South Carolina courts have addressed the issue of the enforceability of arbitration clauses in the context of transactions involving automobiles. *Aiken v. World Financial Corp.* involved a tort action in which an employee of the defendant finance company stole the plaintiff's personal information. 373 S.C. 144, 644 S.E.2d 705 (2007). The employee obtained the plaintiff's information from the plaintiff's loan application and misused the information over a two-year period. *Id.*

In *Aiken*, the South Carolina Supreme Court began its analysis by reiterating the principle that "state and federal policy favor arbitration of disputes and unless a court can say with positive assurance that the arbitration clause is not susceptible to any interpretation that covers the dispute,

arbitration should generally be ordered." *Id.* at 149, 644 S.E.2d at 708 (citing *Zabinski v. Bright Acres Assocs.,* 346 S.C. 580, 596-97, 533 S.E.2d 110, 118-19 (2001)). The court noted that a party will not be required "to submit to arbitration any dispute which he has not agreed to submit." *Id.* It follows then that "courts generally hold that broadly-worded arbitration agreements apply to disputes in which a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." *Id.* Ultimately, the court held that "outrageous torts . . . unforeseeable to a reasonable consumer in the context of normal business dealings" do not fall under the scope of arbitration agreements. *Id.* at 151. The *Aiken* court found that the theft and misuse of the plaintiff's personal information was "outrageous conduct" that the plaintiff could not have foreseen when doing business with the finance company and as a result could not have intended to submit claims arising out of the theft to arbitration. *Id.* According to the plaintiff, the court's intent was not to exclude every intentional tort from the arbitration process, but rather to exclude "those outrageous torts which, although factually related to the performance of the contract, were legally distinct from the contractual relationship between the parties." *Id.* at 152.

Defendants also rely on *Partain v. Upstate Automotive Group*, in which the South Carolina Supreme Court addressed the enforceability of an arbitration clause in the context of purchasing a vehicle. 386 S.C. 488, 689 S.E.2d 602 (2010). In *Partain*, the plaintiff was the victim of a bait-and-switch scheme in which the defendant sold him a different truck than the one he contracted to purchase. *Id.* at 490, 689 S.E.2d at 603. The plaintiff sued the dealership for fraud, and the defendant dealership moved to compel arbitration under an arbitration agreement. *Id*, 689 S.E.2d at 603. Relying in part on *Aiken*, the court held that the arbitration clause did not apply because the alleged wrongful action constituted "illegal and outrageous acts unforeseeable to a reasonable

consumer in the context of normal business dealings." *Id.* at 493, 689 S.E.2d at 605 (internal quotations marks omitted). The court reasoned that the plaintiff could not have contemplated that he was agreeing to arbitrate claims arising from allegedly fraudulent conduct. *Id* at 493-94, 689 S.E.2d at 605.

Defendants argue that arbitration is inappropriate in the instant case because Plaintiffs' actions constitute "outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings." *Osborne v. Marina Inn at Grande Dunes, LLC.*, No. 4:08-cv-0490, 2009 WL 3152044, at *8 (D.S.C. 2009) (quoting *Aiken v. World Fin. Corp. of S.C.*, 373 S.C. 144, 151 (2007)). However, *Aiken* and *Partain* are distinguishable because determining whether Plaintiffs' actions were "illegal and outrageous" first requires a determination of Ms. Kaufman's mental capacity to contract. Absent a specific challenge to the validity of the Arbitration Agreement, this court may not make that determination.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel Arbitration and to Stay All Proceedings Pending Resolution of Arbitrability Claims [Doc. # 5] is granted.

**IT IS SO ORDERED.**

s/ J. Michelle Childs
United States District Judge

December 17, 2010
Greenville, South Carolina